# STATE OF MICHIGAN

# COURT OF APPEALS

INTERNATIONAL OUTDOOR, INC.,

UNPUBLISHED
April 26, 2016

Plaintiff-Appellant,

v

No. 325469
Wayne Circuit Court
LC No. 14-008545-AA

CITY OF HARPER WOODS,

Defendant-Appellee.

Before: JANSEN, P.J., and SERVITTO and M. J. KELLY, JJ.

PER CURIAM.

Plaintiff appeals by leave granted[1] the order of the circuit court affirming the denial by defendant's Board of Zoning Appeals (BZA) of plaintiff's requests for special permits under defendant's sign ordinance, Harper Woods Ordinances, § 21-1 *et seq.*, and determining that defendant's sign ordinance was constitutionally valid. We affirm in part, reverse in part, and remand to the BZA for further development of the record.

## I. FACTS

Plaintiff is in the business of building billboards and selling advertising on those billboards. Plaintiff wanted to erect billboards in Harper Woods. Before building, plaintiff sought permission from defendant's building inspector to obtain permits for construction. The building inspector denied the permit requests to build the signs, finding that plaintiff's proposed billboards violated § 21-6 of defendant's sign ordinance, which provides size, height, and setback requirements for signs. Harper Woods Ordinances, § 21-6. Specifically, § 21-6 requires that a ground pole or freestanding sign, a category that includes billboards, have a maximum area of 200 square feet, maximum height of 22 feet, and minimum setback of 25 feet. *Id.* Plaintiff's proposed billboards were 672 square feet in area, 70 feet tall, and had no setback.

The sign ordinance contains a provision permitting individuals to seek a "special permit" to build a sign that does not comply with the sign ordinance. Harper Woods Ordinances, § 21-

---

[1] See *Int'l Outdoor, Inc v Harper Woods*, unpublished order of the Court of Appeals, entered July 22, 2015 (Docket No. 325469).

15. Plaintiff submitted applications for special permits pursuant to § 21-15(d) of defendant's sign ordinance. The applications submitted by plaintiff included a document expressing why plaintiff believed the special permits should be granted, citing, among other reasons, similar signs in the area. Pursuant to § 21-15, the special permit requests were considered by the BZA.

The record of the BZA reveals that the BZA received input from a community planner, McKenna Associates, as well as defendant's fire marshal. The fire marshal was also the building inspector who initially denied the sign permit requests. Both McKenna Associates and the fire marshal recommended that the BZA deny the special permits. The leasing agent for a local apartment complex and the property manager for a local condominium complex submitted letters opposing the special permits for the billboards. McKenna Associates and the citizens asserted that the billboards would not be appropriate, while the fire marshal stated that defendant's fire department was not equipped to handle a fire on the billboards.

Representatives from plaintiff attended the BZA meeting pertaining to plaintiff's requests for special permits. The only official record of that meeting is the meeting minutes. The meeting minutes reveal that plaintiff was present, that several citizens were present to oppose the billboards, and that the two letters were submitted. The minutes do not reflect what evidence was presented or what arguments were made. Nor do the minutes provide any factual findings or any reasoning on behalf of the BZA. Rather, the meeting minutes simply announce that the requests for special permits were denied.

Plaintiff appealed that decision as of right to the circuit court, alleging that the BZA failed to provide reasoning and factual findings on the record, and arguing that defendant's sign ordinance was unconstitutional. After hearing arguments from the parties, the circuit court determined that defendant's sign ordinance was constitutional and that the BZA's failure to state findings of fact and reasoning on the record was not error requiring reversal where the record provided by the BZA fully supported the reasoning behind the BZA's decision. Subsequently, this Court granted leave to appeal.[2] See *Int'l Outdoor, Inc v Harper Woods*, unpublished order of the Court of Appeals, entered July 22, 2015 (Docket No. 325469).

## II. FIRST AMENDMENT CHALLENGE

Plaintiff first argues that § 21-15(d) of defendant's sign ordinance is an unconstitutional prior restraint on free speech. We disagree.

"We review constitutional issues de novo." *Kloian v Schwartz*, 272 Mich App 232, 244; 725 NW2d 671 (2006). An individual or business seeking to erect a sign in Harper Woods must comply with defendant's sign ordinance. Section 21-1 of the sign ordinance announces the purpose of the ordinance:

---

[2] Plaintiff also argued that the BZA engaged in improper ex parte communication with McKenna Associates without allowing plaintiff to respond to the McKenna Associates report. The trial court determined that there was no due-process violation. Plaintiff does not challenge this portion of the trial court's opinion in its brief on appeal.

The purpose of this chapter is to permit such signs as will not, by reason of their size, location, construction or manner of display endanger life and limb, confuse or mislead traffic, obstruct vision necessary for traffic safety or otherwise endanger the public morals, health or safety; and further, to regulate such permitted signs in such a way as to create land use patterns compatible with other major land use objectives and to prevent such signs from causing annoyance or disturbance to the residents of the city. [Harper Woods Ordinances, § 21-1.]

The sign ordinance then defines different types of signs, with a billboard falling under the definition of a "[g]round pole or freestanding sign[.]" Harper Woods Ordinances, § 21-2. Specifically, such a sign is "[a] display sign supported by uprights or braces permanently implanted in the ground or permanently attached to the ground surface." *Id*. Section 21-5 of defendant's sign ordinance reflects that billboards are permitted on land zoned C1, and it is undisputed that both of the subject properties are so zoned. Harper Woods Ordinances, § 21-5. Section 21-6 provides for area, height, and placement regulations. Harper Woods Ordinances, § 21-6. Ground pole or freestanding signs are limited to a maximum area of 200 square feet, a maximum height of 22 feet, and a minimum setback of 25 feet. *Id*. The ordinance also provides the building inspector power to remove noncompliant signs after providing the landowner with written notice of the violation. Harper Woods Ordinances, § 21-13(c).

It is undisputed that plaintiff sought to erect billboards on property located in Harper Woods. It is further undisputed that two signs, as proposed, were in violation of the maximum area, maximum height, and minimum setback requirements of § 21-6. Consequently, when plaintiff sought permits from defendant to build the billboards, defendant's building inspector denied the permits. Plaintiff does not dispute the determination with regard to § 21-6. Defendant's sign ordinance, however, has an appeals process for when a sign is in violation of a section of the sign ordinance. Specifically, the BZA "*may* grant a special permit for a sign which does not comply with the provisions of this chapter[.]" Harper Woods Ordinances, § 21-15(d) (emphasis added). For the BZA to even consider granting a special permit, the proposed sign must conform to four separate requirements:

(1) The particular sign will be in harmony with the general purpose and intent of this chapter;

(2) The sign will not be injurious to the immediate neighborhood or adjacent land use;

(3) The sign is sufficiently compatible with the architectural and design character of the immediate neighborhood;

(4) The sign will not be hazardous to passing traffic or otherwise detrimental to the public safety and welfare. [*Id*.]

Even if a sign conforms with those four requirements, the discretion regarding whether to grant the special permit still lies with the BZA because § 21-15(d). Once again, it is undisputed that plaintiff filed applications for special permits pursuant to § 21-15(d) of defendant's sign

ordinance. It is also undisputed that the applications for special permits were denied for two signs.

Plaintiff argues on appeal that this Court should reverse the decision of the BZA and the trial court because § 21-15(d) is a violation of the First Amendment to the United States Constitution. "The First Amendment's guarantee of 'the freedom of speech, or of the press' prohibits a wide assortment of government restraints upon expression . . . ." *Thomas v Chicago Park Dist*, 534 US 316, 321; 122 S Ct 775; 151 L Ed 2d 783 (2002). "It is well established that in the area of freedom of expression an overbroad regulation may be subject to facial review and invalidation . . . ." *Forsyth Co v Nationalist Movement*, 505 US 123, 129; 112 S Ct 2395; 120 L Ed 2d 101 (1992). "[A]ny permit scheme controlling the time, place, and manner of speech must not be based on the content of the message, must be narrowly tailored to serve a significant governmental interest, and must leave open ample alternatives for communication." *Id*. at 130.

"Billboards, then, like other media of communication, combine communicative and noncommunicative aspects." *Metromedia, Inc v San Diego*, 453 US 490, 502; 101 S Ct 2882; 69 L Ed 2d 800 (1981) (opinion by WHITE, J.). "As with other media, the government has legitimate interests in controlling the noncommunicative aspects of the medium . . . but the First and Fourteenth Amendments foreclose a similar interest in controlling the communicative aspects." *Id*. (citation omitted). "A government regulation that allows arbitrary application is 'inherently inconsistent with a valid time, place, and manner regulation because such discretion has the potential for becoming a means of suppressing a particular point of view.' " *Forsyth Co*, 505 US at 130 (citation omitted). The United States Supreme Court has explained, "At the root of [a] long line of precedent is the time-tested knowledge that in the area of free expression a licensing statute placing unbridled discretion in the hands of a government official or agency constitutes a prior restraint and may result in censorship." *Lakewood v Plain Dealer Publishing Co*, 486 US 750, 757; 108 S Ct 2138; 100 L Ed 2d 771 (1988).

"To curtail that risk, a law subjecting the exercise of First Amendment freedoms to the prior restraint of a license must contain narrow, objective, and definite standards to guide the licensing authority." *Forsyth Co*, 505 US at 131 (citations and quotation marks omitted). As the United States Supreme Court acknowledged, "[E]ven content-neutral time, place, and manner restrictions can be applied in such a manner as to stifle free expression." *Thomas*, 534 US at 323. "We have thus required that a time, place, and manner regulation contain adequate standards to guide the official's decision and render it subject to effective judicial review." *Id*.

Plaintiff argues that § 21-15(d) is a licensing scheme that amounts to a prior restraint on speech and does not have sufficiently objective standards to avoid the dangers of censorship, as referred to in *Lakewood*, 486 US at 757. We disagree with that assessment of the ordinance. As has been discussed, it is clear that defendant's sign ordinance permits signs, including billboards, that comply with the area, height, and setback requirements found in § 21-6, and that this section is a constitutional time, place, and manner restriction on signs. Section 21-15(d) merely permits the BZA to waive those requirements and grant a special permit for the reasons stated within that section. Defendant's sign ordinance does not bar billboards entirely and then only permit them once a special permit is obtained. There is nothing in the record to suggest that if plaintiff's proposed billboards had been compliant with § 21-6, that plaintiff would have even had to seek a variance, let alone be granted one by defendant.

Contrary to the argument by plaintiff, the United States Supreme Court has considered similar waiver provisions, although briefly. In *Thomas*, the Chicago Park District "adopted an ordinance that require[d] a person to obtain a permit in order to 'conduct a public assembly, parade, picnic, or other event involving more than fifty individuals,' or engage in an activity such as 'creat[ing] or emit[ting] any Amplified Sound.' " *Thomas*, 534 US at 318 (second and third alterations in original). The Chicago Park ordinance contained 13 grounds upon which an application for a permit could be denied. *Id*. The Chicago Park District was only permitted to deny applications for one of those 13 reasons, was required to process the application within 28 days, and was required to clearly explain the reasons for a denial, which satisfied the Court that there were "reasonably specific and objective" grounds that were guiding the Park District. *Id*. at 324.

The ordinance, however, did not *require* that permits be denied for one of those reasons, but only that they *may* be denied. *Thomas*, 534 US at 324. The petitioners alleged that this permissive language allowed the Park District "to waive the permit requirements for some favored speakers, while insisting upon them for others." *Id*. The Court referred to the oral argument by the Park District expressing that the intent of the waiver option written into the ordinance was "to permit overlooking only those inadequacies that, under the circumstances, do no harm to the policies furthered by the application requirements." *Id*. at 324-325. In sum, the Court determined that ridding the ordinance of the waiver language would do more harm to free speech than if there were no waiver provision. *Id*. at 325. The Court explained further:

> The prophylaxis achieved by insisting upon a rigid, no-waiver application of the ordinance requirements would be far outweighed, we think, by the accompanying senseless prohibition of speech (and of other activity in the park) by organizations that fail to meet the technical requirements of the ordinance but for one reason or another pose no risk of the evils that those requirements are designed to avoid. [*Id*.]

The Court noted that there might be situations where waivers were provided to favored speakers or denied to disfavored speakers. *Id*. The Court said such application of the waiver would be clearly unconstitutional. *Id*. However, the Court stated that "this abuse must be dealt with if and when a pattern of unlawful favoritism appears, rather than by insisting upon a degree of rigidity that is found in few legal arrangements." *Id*. In sum, the Court held that, where there was the possibility of waiving content-neutral restrictions for some form of speech, even when those waivers relied on the government's discretion, the waiver was permissible. *Id*. "On balance, we think the permissive nature of the ordinance furthers, rather than constricts, free speech." *Id*.

The present case is analogous to the situation presented in *Thomas*. Here, this Court is presented with an ordinance scheme that regulates signs in defendant city based solely on the size, height, and placement of those signs. If a sign complies with those standards, it is permitted. Likewise, in *Thomas*, someone seeking to have a specified public event at a Chicago Park was required to get a permit. *Thomas*, 534 US at 324-325. If the person seeking the permit complied with the 13 requirements listed therein, the permit was granted. *Id*. at 318-319. If a person failed to comply with one or more of those requirements, then the Chicago Park District was allowed to deny the permit, but could allow a waiver of those requirements in its discretion.

*Id*. Here, if a sign failed to meet the requirements of § 21-6, defendant's BZA could waive those requirements if the four factors in § 21-15(d) were met.

The Court in *Thomas* was satisfied that the Park District had construed its permissive ordinance to only allow waivers when an applicant was not in technical conformity with the ordinance's requirements, but the waiver otherwise was not objectionable to the purpose of the ordinance. Notably, the ordinance in *Thomas* did not contain language that limited the Park District to follow that requirement. In the present case, however, § 21-15(d) of the ordinance limited defendant's BZA to only grant waivers, or special permits, when a noncompliant sign would "be in harmony with the general purpose and intent of" the sign ordinance, "not be injurious to the immediate neighborhood or adjacent land use," be "sufficiently compatible with the architectural and design character of the immediate neighborhood," and "not be hazardous to passing traffic or otherwise detrimental to the public safety and welfare." In other words, the Court in *Thomas* was content to rely on the governing body's expression that it would only grant waivers based on upholding the purpose and intent of the ordinance, while defendant here actually set out those requirements in the sign ordinance.

The Court in *Thomas* even recognized the possibility that the discretion provided to the governing body might be used to favor preferred speech, or more problematically, disfavor speech that was not preferred by the governing body. *Thomas*, 534 US at 325. That danger alone, however, was not enough for the Court to determine that the ordinance was unconstitutional. *Id*. Rather, the Court was clear that a challenger to such a waiver provision would be required to allege an unconstitutional application of the wavier provision. *Id*. In other words, a challenger would be required to show a history of favoritism in applying the waiver, permitting certain types of speech while blocking others. *Id*.

In the present case, plaintiff does not allege that defendant's BZA engaged in an unconstitutional application of § 21-15(d), but only that the waiver section of the ordinance was unconstitutional on its face. The Court's decision in *Thomas* construing constitutional law is binding on this Court. See *Abela v Gen Motors Corp*, 469 Mich 603, 606; 677 NW2d 325 (2004). Because the Court in *Thomas* held that even implied rules within the governmental body's discretion were enough to survive First Amendment review, we conclude the same. We therefore affirm the trial court's determination that § 21-15(d) was constitutional.

## III. DUE-PROCESS CHALLENGE

Plaintiff next argues that it was denied due process because the BZA failed to make a proper record. We agree.

"This Court reviews de novo a trial court's decision in an appeal from a city's zoning board, while giving great deference to the trial court and zoning board's findings." *Norman Corp v East Tawas*, 263 Mich App 194, 198; 687 NW2d 861 (2004). "All final decisions, findings, rulings and orders of any administrative officer or agency existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights or licenses, shall be subject to direct review by the courts as provided by law." Const 1963, art 6, § 28. Relying on that constitutional mandate, this Court has held that "[t]he decision of a zoning board should be affirmed by the courts unless it is (1) contrary to law, (2) based on improper

procedure, (3) not supported by competent, material, and substantial evidence on the record, or (4) an abuse of discretion." *Reenders v Parker*, 217 Mich App 373, 378; 551 NW2d 474 (1996). "Meaningful judicial review of whether there was competent, material, and substantial evidence on the record to support a zoning board decision requires 'a knowledge of the facts justifying the board's . . . conclusion.'" *Id*. (citation omitted). "[T]he board of zoning appeals must state the grounds upon which it justifies" its decision. *Tireman-Joy-Chicago Improvement Ass'n v Chernick*, 361 Mich 211, 219; 105 NW2d 57 (1960). "It is insufficient for the zoning board to merely repeat the conclusionary language of the zoning ordinance without specifying the factual findings underlying the determination that the requirements of the ordinance were satisfied in the case at hand." *Reenders*, 217 Mich App at 378-379.

The BZA did not make factual findings on the record, nor did it supply any form of reasoning regarding its decision. *Reenders* provides this Court with binding and determinative case law on the issue. In that case, the petitioners lived next door to a homeowner who was requesting a zoning variance that would allow the homeowner to build a home addition that would encroach on the setback from the petitioners' property. *Reenders*, 217 Mich App at 374-375. The petitioners reported to the zoning board hearing and opposed the variance, but the variance was granted. *Id*. at 375.

This Court, on appeal, noted that the zoning board's decision provided reasoning for some of the variance requirements, but not all. *Reenders*, 217 Mich App at 378-379. Further, some of the reasons provided were merely artful restatements of the zoning ordinance without any supporting facts to be gleaned from the record. *Id*. at 380-381. For some variance requirements, there were no findings at all. *Id*. at 381. This Court concluded that "the record developed by the zoning board is inadequate to allow us to determine whether the board's decision was supported by competent, material, and substantial evidence." *Id*. For that reason, this Court remanded to the zoning board to announce the facts and reasoning on the record. *Id*.

The present case reveals an even more egregious lack of factual findings than that in *Reenders*. Here, defendant's BZA did not make a single factual finding on the record, nor did it provide any reasoning for why plaintiff's special permits were denied. The BZA simply announced its position that the special permits were denied. Pursuant to the binding decision in *Reenders*, that action by the BZA is not permitted. As this Court stated in *Reenders*, 217 Mich App at 381, "we cannot affirm a decision where the record is as devoid of factual or logical support as is the case here."

To agree with defendant that findings of fact and reasoning is not required by the BZA where the evidence provided to the BZA supports the decision would be inapposite to the standard announced in *Reenders*. Indeed, this appeal presents an even more compelling case for reversal, considering that, as just discussed, plaintiff could only challenge § 21-15(d) on the grounds that it was unconstitutionally applied. Without a factual and logical record provided by the BZA, plaintiff is left without any manner of proving that § 21-15(d) is being applied with favoritism based on the content of speech. This decision is supported by our Supreme Court's decision in *Chernick*, 361 Mich at 211, in which the Court held that the lack of any reasoning or facts on the record was a denial of due process and required reversal. Accordingly, remand is required in order for the BZA to develop the record related to its factual findings and reasoning for its decision.

Affirmed in part, reversed in part, and remanded to the BZA to develop the record consistent with this opinion. The supplementary record and decision shall be filed with this Court. We retain jurisdiction.

/s/ Kathleen Jansen
/s/ Deborah A. Servitto
/s/ Michael J. Kelly

# Court of Appeals, State of Michigan

# ORDER

International Outdoor Inc v City of Harper Woods

Docket No. 325469

LC No. 2014-008545-AA

Kathleen Jansen
Presiding Judge

Deborah A. Servitto

Michael J. Kelly
Judges

Pursuant to the opinion issued concurrently with this order, this case is REMANDED to the defendant's Board of Zoning Appeals (BZA) to develop the record related to its factual findings and reasoning for its decision to deny plaintiff's application for a special permit under defendant's sign ordinance, Harper Woods Ordinances, § 21-1.

**The BZA should complete the proceedings consistent with the Court's opinion within 56 days of the Clerk's certification of this order**.

The supplementary record and decision shall be filed with this Court within 21 days after completion of the proceedings. The parties may file a supplemental brief on appeal within 21 days after completion of the proceedings on remand.

We retain jurisdiction.

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

APR 26 2016
_____
Date

_____
Chief Clerk